Penshurst Trading Inc. d/b/a Juliska,

        Plaintiff,

    v.

Zodax L.P.

        Defendant.

No. 14-cv-2710-RJS (GWG)

Defendant Zodax's Memorandum of Points and Authorities Supporting its Motion for Attorney Fees

District Judge Sullivan
Magistrate Judge Gorenstein

## Contents

A.  Introduction ...................................................................................................1

B.  Background Facts ...........................................................................................2

    1.  Juliska's Initial Protest against Zodax ...........................................................3

    2.  Zodax's Attempts to Settle....................................................................4

    3.  Juliska's Attempt to Obtain a Preliminary Injunction ....................................6

    4.  Facts were unimportant to Juliska so it did nothing until late September. ......................6

    5.  Juliska dismissed because it knew it had to produce evidence that would cement Zodax's defense to Juliska's copyright claims and it would have to show at trial or in response to a summary judgment motion that it could not support any claims. ...................................................6

        a.  Juliska could not prove copying ................................................................7

        b.  Juliska's glasses and vases are unprotectible useful articles. ..................................7

        c.  Authorship of the Copyrighted Works ....................................................7

    6.  Juliska's stated rationale for dismissing is not the real reason. ........................8

C.  Argument........................................................................................................9

    1.  An award of attorney fees for Zodax's entire defense is proper......................9

    2.  Awarding attorney fees is proper under the Lanham Act when the case is "exceptional" such as when a plaintiff files suit knowing that it lacks a material element of its claim..........................................................................9

    3.  Juliska's trademark infringement claim was frivolous .................................12

    4.  Juliska's trade dress claim is equally baseless because Juliska had no evidence that it had even begun generating secondary meaning, a requirement for a protectable trade dress ........................................................12

        a.  Juliska had no evidence of brand recognition. ........................................12

        b.  Though copying would be irrelevant, Zodax did not copy Juliska's designs. ..................................................................................................14

     c.    Juliska's designs are too complex to qualify as a protectable trade dress because the public could not keep its features in mind. ..................14

     d.    Juliska's glassware designs are too inconsistent to be a brand. ............15

  5.  Juliska's copyright claim is objectively unreasonable because it is not the author, it never had evidence of copying, and it knew that its glasses and vases are uncopyrightable "useful articles." ..................16

     a.    Prevailing defendants in copyright actions can recovery their attorney fees when the action was frivolous, objectively unreasonable or brought for improper motivation. ..................16

     b.    Juliska knew that it could not prove copying ..................18

     c.    Juliska's glasses and vases are not copyrightable because they are "useful articles." ..................18

     d.    Juliska is not the "author" of the copyrighted works. ..................20

     e.    Juliska's amending the complaint to add a copyright infringement claim was a ploy to increase the expense to Zodax and delay Zodax from filing a summary judgment motion. ..................20

     f.    The related state law claims would have fallen. ..................21

  6.  Juliska's dismissal near the end of discovery but before summary judgment or trial does not excuse its actions ..................21

  7.  Most of Zodax's attorneys fees were incurred defending against the trademark and trade dress claims ..................22

  8.  The Amount of Attorney Fees is Reasonable ..................23

D.    Conclusion ..................24

### Table of Authorities

#### Cases

*Adsani v. Miller*, No. 94 Civ. 9131 (DLC), 1996 WL 531858 (S.D.N.Y. Sept. 19, 1996) ..................17

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Alb.*, 522 F.3d 182 (2d Cir. 2007) ..................23

*Atlantis Silverworks v. 7th Sense*, No. 96 Civ. 4058 (MBM), 1997 U.S. Dist. LEXIS 3158, 1997 WL 128403 (S.D.N.Y. Mar. 19, 1997) ..................13

*Blakeman v. Walt Disney Co.*, 613 F. Supp. 2d 288 (E.D.N.Y. 2009) ..................18

*Brandir Int'l v. Cascade Pac. Lumber Co.*, 834 F.2d 1142 (2d Cir. 1987) ..................18, 19

*Brown v. Starrett City Assocs.* (*JBW*), No. 09-CV-3282 (JBW), 2011 U.S. Dist. LEXIS 124480, 2011 WL 5118438 (E.D.N.Y. Oct. 27, 2011) ..................23

Zodax's Memo. of Points and Authorities
Supporting its Motion for Attorney Fees
    ii    
Penshurst Trading (Juliska) v. Zodax
No. 14-cv-2710-RSJ (OWG)

*Bryant v. Media Right Prods.*, 603 F.3d 135 (2d Cir. 2010) .......................................................... 2

*Budget Cinema v. Watertower Assocs.*, 81 F.3d 729 (7th Cir. 1996) .......................................... 16

*Calvin Klein Co. v. Farah Mfg.*, No. 85 Civ. 2989 (CBM), 1985 U.S. Dist.
    LEXIS 13475, 1985 WL 3953 (S.D.N.Y. Nov. 26, 1985) .................................................. 13

*Carol Barnhart, Inc. v. Econ. Cover Corp.*, 773 F.2d 411 (2d Cir. 1985) ................................ 20

*Castle Rock Entm't v. Carol Publ'g Group*, 150 F.3d 132 (2d Cir. 1998) .................................. 17

*Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162 (2d Cir. 1991) .................................. 13

*Colombrito v. Kelly*, 764 F.2d 122 (2d Cir. 1985) ................................................................. 1, 21

*Computer Assocs. v. Altai*, 982 F.2d 693 (2d Cir. 1992) ............................................................. 5

*Contractual Obligation Prods., L.L.C. v. AMC Networks, Inc.*, 546 F. Supp.
    2d 120 (S.D.N.Y. 2008) ................................................................................................ 6, 12

*Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13 Civ. 2754 (KBF), 2014
    U.S. Dist. LEXIS 177176, 2014 WL 7323419 (S.D.N.Y. Dec. 16, 2014) .................. 10, 11

*Diamond v. Am-Law Pub. Corp.*, 745 F.2d 142 (2d Cir. 1984) .................................................. 17

*Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F. Supp. 470
    (S.D.N.Y. 1984) ................................................................................................................. 11

*Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL), 2009 U.S. Dist.
    LEXIS 29343, 2009 WL 935674 (S.D.N.Y. Apr. 6, 2009) ................................................ 24

*Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663 (S.D.N.Y. 2001) ............................... 17

*Fabrication Enters. v. Hygenic Corp.*, 64 F.3d 53 (2d Cir. 1995) ............................................. 13

*Fair Wind Sailing v. Dempster*, 764 F.3d 303 (3d Cir. 2014) ................................................... 10

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996) .............................................................. 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................................... 17

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987) .................................... 13

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ......................................................................... 16

*IMAF, S.P.A. v. J.C. Penney Co.*, 810 F. Supp. 96 (S.D.N.Y. 1992) ......................................... 11

*In re Bongrain Int'l*, 894 F.2d 1316 (Fed. Cir. 1990) ................................................................ 14

*In re Maxim Integrated Prods.,* MDL No. 2354, 2015 U.S. Dist. LEXIS 24032, 2015
    WL 867651 (W.D. Pa. Feb. 27, 2015) .............................................................................. 11

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ...................................... 23

*Krasnow v. Sacks & Perry*, 58 F. Supp. 828 (S.D.N.Y. 1945) .............................................. 1, 21

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir.
    1997) ............................................................................................................................. 5, 15

*Maljack Prods. v. Goodtimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996)........................ 16

*Matthew Bender & Co. v. W. Publ'g*, 240 F.3d 116 (2d Cir. 2001) ..................................... 16, 17

*Mennen Co. v. Gillette Co.*, 565 F. Supp. 648 (S.D.N.Y. 1983) ............................................... 11

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521 (D.C. Cir. 1985) .................................................................................................... 10

*Octane Fitness, L.L.C. v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) .................................................................................................... 1, 10

*Perdue v. Kenny*, 559 U.S. 542 (2010) ................................................ 23

*Rates Tech., Inc. v. Broadvox Holding Co.*, No. 13 Civ. 0152 (SAS), 2014 WL 5023354, 2014 U.S. Dist. LEXIS 142998 (S.D.N.Y. Oct. 7, 2014) .......................... 11

*Riviera Distribs. v. Jones*, 517 F.3d 926 (7th Cir. 2008) ................................ 22

*Screenlife Estab. v. Tower Video*, 868 F. Supp. 47 (S.D.N.Y. 1994) ........................ 17

*Shady Records, Inc. v. Source Enters.*, 371 F. Supp. 2d 394 (S.D.N.Y. 2005) .................. 21

*Small v. Implant Direct Mfg.*, No. 06 Civ. 683(NRB), 2014 U.S. Dist. LEXIS 154468, 2014 WL 5463621 (S.D.N.Y. Oct. 22, 2014) .......................... 11

*Spencer v. City of N.Y.*, No. 06 Civ. 2852 (KMW), 2013 U.S. Dist. LEXIS 161693, 2013 WL 6008240 (S.D.N.Y. Nov. 12, 2013) .......................... 23

*Sports Traveler v. Advance Mag. Publrs.*, 25 F. Supp. 2d 154 (S.D.N.Y. 1998) .................................................................................................... 13

*Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258 (E.D.N.Y. 2014) .................................................................................................... 21

*Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208 (2d Cir. 1985) .................... 5

*Torah Soft Ltd. v. Drosnin*, No. 00 Civ. 5650 (JCF), 2001 U.S. Dist. LEXIS 19217, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) .......................... 21

*TrafFix Devices, Inc v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) .................... 5

*Viola Sportswear v. Mimun*, 574 F. Supp. 619 (E.D.N.Y. 1983) .................... 11

*Wainwright Secur., Inc. v. Wall St. Transcript Corp.*, 80 F.R.D. 103 (S.D.N.Y. 1978) .................................................................................. 9

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000) .................... 1, 12, 13, 14

*Walker & Zanger, Inc. v. Paragon, Indus.*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007) .................................................................................................... 14

*Walt Disney Co. v. Goodtimes Home Video Corp.*, 830 F. Supp. 762 (S.D.N.Y. 1993) .................................................................................. 15

**STATUTES**

15 U.S.C. § 1117(a) ................................................................................ 9

17 U.S.C. § 101 ................................................................................ 18, 20

17 U.S.C. § 102(a)(5) ............................................................................ 18

17 U.S.C. § 505 ............................................................................ 2, 16

**OTHER AUTHORITIES**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 30:99 (4th Ed. 2015) ............................................................................................................10

## A. INTRODUCTION

At the March 18 pre-motion conference, the Court asked defendant Zodax's attorney whether Zodax was calling plaintiff Juliska a liar. Proving plaintiff Juliska lied is unnecessary. Rather, Zodax must establish that Juliska's claims were "exceptionally meritless." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), (In a patent infringement suit, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."). The Court also questioned whether Juliska's dismissal cuts off Zodax's ability to seek attorney fees. True, *Colombrito v. Kelly*, 764 F.2d 122, 134-35 (2d Cir. 1985), normally limits a successful defendant's right to attorney fees following a plaintiff's dismissal with prejudice. That general rule does not apply where the lawsuit involves statutes (e.g., trademark and copyright) that provide for attorney fees. *See Krasnow v. Sacks & Perry, Inc.*, 58 F. Supp. 828 (S.D.N.Y. 1945), (Awarding attorney fees after a dismissal with prejudice proper in "exceptional" patent infringement case). Juliska's dismissal here is an implied admission that it never should have brought and pursued the lawsuit.

Zodax has endured ten months of litigation and accrued more than $450,000 in attorney fees defending against Juliska's frivolous claims. Not requiring Juliska to reimburse Zodax these burdens simply because Juliska chose to throw in the towel is unjust.

This motion will show not only that Juliska's trademark and trade dress infringement claims are "exceptionally meritless," but also will demonstrate that Juliska did nothing to acquire supporting evidence, no doubt because it knew none existed. No document shows Zodax used any of Juliska's three registered trademarks all of which use the word "JULISKA." To the contrary, all Zodax products prominently feature the ZODAX trademark. Yet, until Juliska dismissed, it continued to claim trademark infringement.

In addition, although a plaintiff alleging infringement of a product design must prove secondary meaning, *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000), Juliska neither produced evidence of the required secondary meaning of its alleged "berry and thread" trade

dress nor tried to locate supporting evidence. Juliska's conclusory statements about its advertising expenditures and sales are irrelevant. Juliska had to establish that consumers recognize Juliska's unregistered trade dress as identifying Juliska. Further, without an adverse judgment on its trade dress claims, Juliska remains free to assert its alleged trade dress rights against other competitors, just as it had done to numerous competitors before it sued Zodax.

Courts also award attorney fees to copyright defendants under 17 U.S.C. § 505 by using factors including the frivolousness plaintiff's claims, its motivation, whether the claims were "objectively unreasonable" and "compensation and deterrence." *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010). Juliska had no evidence of copying the key features of its glassware that differentiates it from existing glassware. Juliska also dismissed just before it had to subject its "creative team" to depositions that likely would have shown that glassblowers in the Czech Republic are the true authors. Juliska's copyright claims also are exceptionally baseless because Juliska knew or should have known that its copyrights are invalid.

Juliska's dismissal before Zodax filed for summary judgment or before trial and before the parties presented their case to the Court should not affect Zodax's right to attorney fees. This motion must show (1) that Zodax would have prevailed on all claims had the suit continued and (2) that Juliska knew that its claims lacked a factual or legal basis. This motion shows both. Juliska may challenge some of statements below, but its dismissing its complaint on the eve of Zodax reinforcing its defenses (and its presentation in this motion) supports Zodax's position. Since Juliska's admits the case was not worthwhile, Juliska should compensate Zodax for the cost of a needless defense.

## B. BACKGROUND FACTS

Juliska and Zodax sell glassware and other items. Both distribute glassware in the United States that foreign companies manufacture. David Gooding, Juliska's CEO, described his

company's products in a video published on YouTube: "Our entire product line is inspired and anchored by forty authentic reproductions from 14th through 18th Century Europe."[1]

### 1. Juliska's Initial Protest against Zodax

Juliska first accused Zodax of infringement in 2012 when Gooding told Edward Cohanim, Zodax's vice-president, at a 2012 trade show that several pieces of Zodax glassware infringed unspecified Juliska rights. Cohanim asked Gooding to send a copy of any copyright registrations for the allegedly infringing products to allow Zodax to investigate the claim. Gooding did not follow up so Zodax continued selling the items and showing them at trade shows including those Juliska attended. Cohanim Decl. ¶ 4.

Gooding approached Cohanim about 18 months later at a 2014 trade show and again alleged that some Zodax glassware items infringed Juliska's rights. Cohanim again asked for copies of Juliska's registered rights. Cohanim Decl. ¶ 6. Soon after that show, Juliska's attorney sent Zodax a cease and desist letter, Ex. 1,[2] which cited three Juliska registered trademarks and its alleged trade dress. Two registrations are for the word mark JULISKA; the third is a logo. Exs. 2–3. Zodax's counsel responded that Zodax "does not use this mark, or anything similar, on any of its products." Ex. 4. From then to now, Juliska offered no evidence supporting Zodax's infringement.

Regarding Juliska's trade dress assertion, Zodax reminded Juliska of the secondary meaning requirement, that "consumers *link* the trade dress with the brand." Ex. 4. Since then, Juliska offered no evidence of any linking of the products' design with identification of Juliska as the source. Juliska's March 25 response to Zodax stated, "[R]eputable manufacturers of glassware, including Villeroy & Boch and others, have recognized Juliska's rights." Ex. 5. Juliska did not answer Zodax's question about secondary meaning, the linkage between design

---

[1] Zodax has requested permission from the court to file the videos as exhibits to this motion. If the court grants Zodax's request, the CDs will be hand filed with a courtesy copy sent to chambers.

[2] The Harris, Sarvaiya and Cohanim declarations authenticate the exhibits. Toby Butterfield, the attorney who wrote to Zodax and filed the complaint, is no longer Juliska's attorney of record.

and source. Rather, Juliska merely argued that others had capitulated to Juliska so Zodax should, too. A separate letter on the same day outlined Juliska's settlement terms and demanded a response by April 2. Ex. 6.

### 2. Zodax's Attempts to Settle

Zodax responded on April 2 by offering to acknowledge Juliska's rights in its registered trademarks and to stop selling the complained-of glassware. Ex. 7. At a later phone conference, Zodax expressed willingness to sign an agreement, which Juliska agreed to draft. Sarvaiya Decl. ¶ 6. Late on April 8, Juliska's counsel sent a one-page, incomplete settlement agreement to Zodax's counsel, requiring Zodax to fill in "blanks" left in the agreement. Juliska's draft included terms that the parties had never discussed. Sarvaiya Decl. ¶ 9; Ex. 10–11. Juliska also demanded that an "authorized Zodax representative sign the complete agreement, and return it to us by e-mail tomorrow. Otherwise, as stated in our April 3 letter, we are prepared to file a complaint against Zodax tomorrow, April 9, 2014." Sarvaiya Decl. ¶ 9.

Zodax's April 14 revised settlement agreement named the four products at issue and offered (1) an acknowledgement of Juliska's trademark rights, (2) a promise to stop buying the accused products and to sell off about 2,000 units in inventory within four months, and (3) mutual releases. Sarvaiya Decl. ¶ 11, Ex. 12 and 13. Juliska's April 16 response was this suit, (Dkt. 2).

On April 23, Juliska sent another draft settlement agreement, which would have required Zodax to pay Juliska $50,000. Sarvaiya Decl. ¶ 15, Ex. 16. In later drafts, Juliska lowered its monetary demands, but even last November, Juliska still demanded payment of money and a consent injunction. Harris Decl. ¶ 7.

Despite the filing of the suit, Zodax wanted to avoid full-scale, coast-to-coast, intellectual property litigation. Therefore, Zodax's May 28 letter contained a detailed opinion why the claims in the complaint were frivolous. Ex. 18. In particular, Zodax reiterated that it never used the word "Juliska" or any similar term. The letter included pictures of Zodax's products labeled with the Zodax trademark.

Zodax also stressed again that Juliska needed evidence of secondary meaning for its alleged trade dress, but had none. Here too, Zodax included pictures of Juliska's advertisements and highlighted that no advertisements used any product design as identifying Juliska as the source. Zodax also reminded Juliska of its heavy burden to prove any product design acquired secondary meaning (citing *Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) and *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997)). The letter also copied text from a Juliska catalog that said, "Our prolific Berry & Thread collection embraces the historic motifs of our Bohemian glassware." Thus, Juliska's advertising admitted "Berry & Thread" is decorative and not source identifying. In addition, other Juliska glassware that it claims contain its trade dress has special names such as "Amalia" and "Isabella." Those marks and the trademark JULISKA are the only source identification for Juliska. The letter also mentions Gooding's appearing in the two, related videos. He even admits in one that the mark JULISKA, not the product design, identifies source when he says, "Each of our pieces is hand signed Juliska. This hallmark is your guarantee of its origin, authenticity and superior quality."

Zodax's letter reminded Juliska that its designs were copies. Gooding's videos admitted to copying, Ex. 23, ¶ 24. "Our entire product line is inspired and anchored by *forty authentic reproductions* from 14th through 18th Century Europe." (Emphasis added) Regarding Juliska's alleged trade dress, Gooding stated, "The blobs of glass, known as prunts, were originally applied for a practical purpose to grip with greasy hands." Thus, Juliska admitted that its designs are functional, but functional designs cannot become protectable trade dress or copyrightable subject matter. *See Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (trade dress) and *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 714 (2d Cir. 1992) (copyright). In addition to discussing the merits, Zodax's letter again explained why continuing the unsupportable lawsuit would subject Juliska to payment of Zodax's attorney fees.

### 3. Juliska's Attempt to Obtain a Preliminary Injunction

In early May 2014, Juliska asked the Court to allow it to file a preliminary injunction motion (Dkt. 7). Its letter mentioned no grounds for infringement or other merits of the proposed motion. The Court noted, "[I]f Plaintiff has in fact known of the infringement for 21 months and has not previously taken action, the Court is unlikely to find irreparable harm …." (Dkt. 13).

Juliska's threat to file a preliminary injunction was merely a tactic to force a settlement. It had to know the Second Circuit's exacting position on delay for preliminary injunction motions. However, Juliska knew that Zodax would have to gear up and incur attorney fees to respond.

### 4. Facts were unimportant to Juliska so it did nothing until late September.

In intellectual property suits, plaintiffs denied a preliminary injunction often seek expedited discovery and an early trial date. After all, if a defendant's infringement really causes irreparable harm, a plaintiff would want condensed discovery and an early trial to obtain a permanent injunction. Juliska did the opposite. After a short stay for mediation, Juliska waited four months to serve its initial written discovery, Harris Decl. ¶ 3, while, this lawsuit continued to cast a cloud on Zodax.

### 5. Juliska dismissed because it knew it had to produce evidence that would cement Zodax's defense to Juliska's copyright claims and it would have to show at trial or in response to a summary judgment motion that it could not support any claims.

Juliska's trademark and trade dress infringement allegations were flawed from the outset. Zodax had no difficulty gathering proof that Juliska lacked any evidence of trademark infringement or secondary meaning. Nevertheless, it still had to spend money gathering its evidence. It knew it never used the JULISKA trademark, and Juliska produced no evidence of such use. Similarly, Zodax's review of Juliska catalogs showed no evidence that Juliska ever promoted any of its designs as identifying Juliska. Thus, Juliska could not prove secondary meaning. Zodax also could show that Juliska had pursued untenable legal theories, which subjected Juliska to liability for Zodax's attorney fees. *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 131-32 (S.D.N.Y. 2008). Thus, discovery on the

trademark and trade dress issues only strengthened Zodax's defense especially when coupled with Juliska's failure to attempt to support them.

Juliska added the copyright claim when it anticipated that Zodax would file a summary judgment motion. Juliska never tried to explain why its copyrights were valid or why Zodax infringed. Nevertheless, Zodax had to defend, and it raised three primary defenses: (1) Juliska could not prove that Zodax copied, (2) Juliska's glasses and vases were unprotectible "useful articles," and (3) Juliska was not the "author" of the copyrighted works.

### a. Juliska could not prove copying

Juliska made no effort to prove Zodax copied (access and probative similarity between the works), an element it had to prove to support infringement. Juliska knew before it sued that Zodax bought its glassware from an overseas factory that sells to all distributors including Zodax. Sarvaiya Decl. ¶ 8, Ex. 9. Zodax did not design the glassware. Therefore, Juliska had to show that the manufacturer had access to Juliska's glassware. It did not try to obtain evidence of access. Without evidence of copying, a copyright infringement claim fails.

### b. Juliska's glasses and vases are unprotectible useful articles.

The Argument section below shows that Copyright does not protect "useful articles." Juliska's glasses and vases are useful articles for drinking and holding flowers. Juliska's glasses and vases, which have intrinsic utilitarian functions for drinking and holding flowers, are uncopyrightable useful articles.

### c. Authorship of the Copyrighted Works

Gooding's video referred to Juliska's glassware as "authentic reproductions from 14th through 18th Century Europe." Authentic reproductions are copies; Juliska cannot be the author. Juliska also advertises that skilled Czech Republic glassblowers (not Juliska employees) make its glassware. Ex. 19, p. 32. In response to a document request seeking "All drawings of Juliska's Berry and Thread design created by Juliska, Juliska's glassware manufacturer or a third party," Ex. 22 (Req. No. 52), Juliska produced some drawings, but none was for any of the four copyrighted works. Because Juliska marked the drawings Confidential – Attorney Eyes Only,

Zodax does not attached those drawings as exhibits. If Juliska employees had designed each piece of copyrighted glassware, Juliska would have drawings for each piece and produced them in discovery.

By dismissing when it did, Juliska also avoided depositions of its "creative team." Juliska's initial disclosures, Ex. 20, listed neither member of that team. When combined with the lack of drawings and Gooding's "authentic reproduction" admission, the team's depositions likely would have confirmed that Juliska's employees did not design the copyrighted glassware. Therefore, Juliska could not show ownership of copyrights.

Juliska also had to prove what portion of its glassware was original. Certainly, the shapes of its glasses and vases are conventional, but it had to show how its glassware differs from earlier designs especially the designs that it had reproduced. Juliska dismissed before it had to answer a contention interrogatory stating what was original, (Ex. 21 (Int. No. 25)), or had to subject its creative team to depositions.

### 6. Juliska's stated rationale for dismissing is not the real reason.

Juliska claims that it dismissed because it only recently learned that the cost to litigate exceeded any potential damages. This is false. Juliska has always known that its potential recovery was tiny. Zodax's April 14, 2014, proposed settlement agreement requested four months to sell off roughly 2,000 units of inventory. Ex. 13. Thus, two days before Juliska sued, it knew Zodax's remaining inventory was small.

In addition, Juliska continued the lawsuit from last August until February knowing that any potential damages at stake did not justify litigation. On August 2 before a settlement conference before Magistrate Judge Gorenstein, Zodax notified Juliska that its sales for all accused products for the previous three years totaled $66,022.40. Sarvaiya Decl. ¶ 18. Zodax updated the sales information in December to show that additional sales during the year had only increased the total to $77,350.55. Even at a whopping 10% royalty rate, the *potential damages never exceeded $10,000.* Sarvaiya Decl. ¶ 18.

Juliska told the Court on January 26, 2015 (Dkt. 63), "During the course of fact discovery, Juliska learned that Defendant's sales of the Accused Products were low in comparison to the cost of continuing litigation." That was something Juliska knew even before it filed suit.

Juliska compounded the statement in its February 9, 2015, letter to the Court (Dkt. 69):

> Defendant has been less than forthcoming with its sales and inventory numbers both pre-litigation and after the suit was instituted. During pre-litigation discussions, Defendant failed to provide concrete inventory data and the representations of its inventory changed from a "few hundred" accused items to a "few thousand." During litigation, the inventory numbers increased to several thousand per accused item.

Not so. Before Juliska sued, Zodax explained that about 2,000 units remained in its inventory. Sarvaiya Decl. ¶ 11. Thus, any change from April 2014 to when Juliska dismissed was slight.

## C. ARGUMENT

### 1. An award of attorney fees for Zodax's entire defense is proper

The facts and law demonstrate Zodax should be awarded its attorney fees for all Juliska's claims. Juliska litigated the trademark and trade dress claims from the outset but added its copyright claim just two months before it dismissed the case. Juliska's pursuit of each claim warrants an award of attorney fees. Nonetheless, most of Zodax's defense went toward the trademark and trade dress claims.

### 2. Awarding attorney fees is proper under the Lanham Act when the case is "exceptional" such as when a plaintiff files suit knowing that it lacks a material element of its claim.

Prevailing parties under the Lanham Act can recover attorney fees in "exceptional cases." 15 U.S.C. § 1117(a). Zodax is the prevailing party because Juliska's dismissal "with prejudice is a complete adjudication of the issues presented by the pleadings." *Wainwright Secur., Inc. v. Wall St. Transcript Corp.*, 80 F.R.D. 103, 106 (S.D.N.Y. 1978).[3]

---

[3] Whether Zodax can obtain its attorney fees when it prevailed because Juliska dismissed—it can—is discussed in this brief's discussion of *Colombrito*, 764 F.2d 122, below.

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. *Octane Fitness,* 134 S. Ct. at 1756. Neither bad faith nor objective baselessness is necessary. Instead, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757. Preponderance of the evidence, not clear and convincing evidence, is required. *Id* at 1758.

*Octane Fitness*, a patent infringement suit, is relevant here because the patent and trademark statutes use the same "exceptional cases" language. In addition, the Supreme Court cited with approval a case that treated "exceptional cases" similarly under the Lanham Act. *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985) (holding in a Lanham Act case, "Congress did not intend rigidly to limit recovery of fees by a defendant to the rare case in which a court finds that the plaintiff 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"). Since then, courts have applied *Octane Fitness* to Lanham Act claims. *See Fair Wind Sailing v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014); *Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13 Civ. 2754 (KBF), 2014 U.S. Dist. LEXIS 177176, at *8, 2014 WL 7323419, at *3 (S.D.N.Y. Dec. 16, 2014) (stating, "[T]his is an exceptional case within the standard articulated in this district, as well as within the more lenient standard set forth by the Supreme Court in *Octane*, to the extent it is applicable.").[4] *See also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:99 (4th Ed. 2015) ("These patent holdings will be influential in trademark law because the Lanham Act provision for attorney fees is identical to that in the Patent Code.").

The Court questioned Zodax's position at the pre-motion conference that *Octane Fitness* makes awards of attorney fees easier. For supports, s*ee McCarthy* § 30:99 ("The result of these

---

[4] One decision in this circuit, *Romag Fasterners, Inc. v. Fossil, Inc.*, No. 3-10-cv-01827, 2014 U.S. Dist. LEXIS 113061, 2013 WL 5782522 (D. Conn. Aug. 14, 2014), disagreed. However, the ruling is *dicta* because the court awarded attorney fees under state law.

holdings was to make it easier for a prevailing defendant to recover attorney fees and retain them on appeal."); *In re Maxim Integrated Prods.*, MDL No. 2354. 2015 U.S. Dist. LEXIS 24032, at *33, 2015 WL 867651, at *6 (W.D. Pa. Feb. 27, 2015) (a patent suit held *Octane Fitness* "lowered the bar" for finding a case exceptional). Courts and commentators recognize that *Octane Fitness* eased the requirements for awarding attorney fees. See, e.g., *Rates Tech., Inc. v. Broadvox Holding Co., LLC*, No. 13 Civ. 0152 (SAS), 2014 WL 5023354, 2014 U.S. Dist. LEXIS 142998, at *16 (S.D.N.Y. Oct. 7, 2014) (a patent suit holding *Octane Fitness* "eschewed the former interpretation of section 285, and articulated a new, more flexible standard by which to assess sanctions under section 285); *Small v. Implant Direct Mfg. LLC,* No. 06 Civ. 683(NRB), 2014 U.S. Dist. LEXIS 154468, at *7, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 22, 2014) (a patent suit holding *Octane Fitness* "lowered the bar for litigation misconduct."); *Cross Commerce*, 2014 WL 7323419, at *3) (a trademark suit holding the *Octane Fitness* standard is "lower than that discussed in previous cases in this district with regard to the Lanham Act.").

Before *Octane Fitness*, courts in this circuit interpreted "exceptional case" frequently. *See, e.g.*, *IMAF, S.P.A. v. J.C. Penney Co.*, 810 F. Supp. 96, 100 (S.D.N.Y. 1992) (defendant awarded attorney fees where claims "utterly lacked a solid legal foundation"); *Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F. Supp. 470, 476 (S.D.N.Y. 1984) (attorney fees proper where claim was "patently baseless"); *Viola Sportswear v. Mimum*, 574 F. Supp. 619, 620-621 (E.D.N.Y. 1983) (awarding defendant its attorney fees because, "[I]t was clear beyond cavil, if it had not been before, that the plaintiff's claim was without any basis in fact," and "The protestations by the moving defendants that the action was baseless was ignored. The juggernaut of litigation was launched and would not be deterred."); *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983) (attorney fees awarded because of "inference that this suit was initiated as a competitive ploy. As such it carries necessary damage to the defendant when plaintiff's claims are found, as they are here, to have no real substance.").

An award of attorney fees is proper where plaintiff knew that it had no evidence to support an essential element of its Lanham Act claim. *Contractual Obligation Prods., L.L.C. v.*

*AMC Networks, Inc.*, 546 F. Supp. 2d at 131-32 (S.D.N.Y. 2008) (stating, "[P]ursuit of a legal theory that plaintiff either knew or should have known was untenable implies bad faith warranting an award of fees under the Lanham Act." *Id.* at 129. *See also Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC*, 510 F. Supp. 2d 1043, 1052 (S.D. Fla. 2007) (awarding prevailing defendant attorney fees where plaintiff had no evidence of secondary meaning to support its trade dress case).

### 3.     Juliska's trademark infringement claim was frivolous

No evidence supports Juliska's claim that Zodax used the mark JULISKA. Zodax's glassware and packaging always uses its ZODAX mark. Cohanim Decl. ¶ 8. Even Juliska's CEO knew that "Zodax glasses have the word 'Zodax' on them." Gooding Depo. (Ex. 27) p. 59:7–10. Further, the original complaint only asserted infringement of Juliska's logo trademark, and the goods listed in the registration are "serving platters," not glassware. Complaint Ex. 1, p. 6. Suing for trademark infringement when the defendant does not use the mark is "bad faith warranting an award of fees under the Lanham Act." *Contractual Obligation*, 546 F. Supp. 2d at 129.

### 4.     Juliska's trade dress claim is equally baseless because Juliska had no evidence that it had even begun generating secondary meaning, a requirement for a protectable trade dress

Proving trade dress infringement is difficult. Juliska had to prove it has a protectable trade dress and Zodax's sales of its accused glassware cause likelihood of confusion to the consuming public. cite. Consumers looking at different Juliska glasses can reach only one conclusion: Juliska's "threads" and "berries" *decorate* the glasses – they do not identify Juliska as the source of the glassware. Juliska had no evidence that its glassware designs were protectable trade dress. It knew this well before it filed suit, and this failure became only clearer during the case.

### a.     Juliska had no evidence of brand recognition.

In *Wal-Mart*, the Supreme Court held that a product's appearance (a line of clothing), as contrasted with its packaging, is never immediately protectable as trade dress. *Wal-Mart*, 529 U.S. at 213. Rather, a product's appearance becomes protectable only when the proprietor can

show brand recognition, i.e., secondary meaning. *Id.* at 214. Trade dress plaintiffs must prove secondary meaning because "[P]roduct design almost invariably serves purposes other than source identification." *Id.* at 213. "[E]ven the most unusual of product designs … is intended not to identify the source, but to render the product itself more useful or more appealing." *Id.*

Juliska's glassware lines and the clothing in *Wal-Mart* fail to serve as trade dress because consumers look at these products for their *aesthetics*. Juliska promotes consumers desire for glassware that confirm to their tastes by showing many varied designs in its catalog (Ex. 19).

A product's appearance acquires secondary meaning as trade dress only "when a consumer immediately associates the dress of the product with its source." *Sports Traveler v. Advance Magazine Pub'l*, 25 F. Supp. 2d 154, 164 (S.D.N.Y. 1998). A plaintiff must meet a "heavy burden" to prove secondary meaning of its trade dress, *Atlantis Silverworks v. 7th Sense*, No. 96 Civ. 4058, 1997 U.S. Dist. LEXIS 3158, at *11, 1997 WL 128403 (S.D.N.Y. Mar. 19, 1997), entailing "vigorous evidentiary requirements." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991).

Establishing secondary meaning for a product design ordinarily requires "look-for" advertising or its equivalent. "[I]f a manufacturer wishes to retain Lanham Act protection for a product feature, it bears the burden of insuring that consumers view the feature in predominantly source-identifying terms." *Fabrication Enters. v. Hygenic Corp.*, 64 F.3d 53, 61 n. 9 (2d Cir. 1995). *See also Calvin Klein Co. v. Farah Mfg. Co.*, No. 85 Civ. 2989 (CBM), 1985 U.S. Dist. LEXIS 13475, at *44, 1985 WL 3953 (S.D.N.Y. Nov. 26, 1985) (holding plaintiff did not show secondary meaning for a tag on jeans because no advertising identified the tag as indicating that plaintiff was the jeans' source); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (holding failure to "urge consumers to look for the 'familiar yellow jug'" of Prestone antifreeze supported lack of secondary meaning.). Thus, "look-for" advertising or its equivalent tells consumers view a product's design as a brand, not merely as something attractive.

Juliska had "look-for" advertising or any other evidence of secondary meaning. Juliska knew or should have known this before suit, and Zodax pressed the issue continuously while the suit continued. Mere advertising is not enough, either. "To provide protection based on extensive advertising would extend trade dress protection to the design of every product with national marketing. Accordingly, plaintiff's advertising expenditures do not constitute circumstantial evidence in support of secondary meaning." *Walker & Zanger, Inc. v. Paragon, Indus., Inc.*, 549 F. Supp. 2d 1168, 1180 (N.D. Cal. 2007). *See also In re Bongrain Int'l Corp.*, 894 F.2d 1316, 1318 (Fed. Cir. 1990) (evidence of sales growth insufficient to prove secondary meaning because growth may indicate product popularity only). To the extent that Juliska advertised, it touted *quality*, not source identification. For example, Juliska's ads state, "Carefully designed to please the polished palate of the wine connoisseur," Ex. 19, p. 19, and "Mouth-blown in the hills outside Prague by Juliska master craftsmen, our signature Bohemian glasses are dazzling little works of art." (Ex. 19, p. 32, and the videos, which are being hand-filed).

**b.** **Though copying would be irrelevant, Zodax did not copy Juliska's designs.**

Zodax did not copy Juliska. It bought products from a foreign trading company, which in turn bought from an overseas factory. Cohanim Decl. ¶ 10. The factory's glassware is available to others in the glassware business. *Id.* ¶ 12. Zodax had nothing to do with the factory's designs. Cohanim Decl. ¶ 11.

Further, copying would be irrelevant. The Court in *Wal-Mart* observed that Wal-Mart intentionally copied plaintiff's clothing. *Wal-Mart*, 529 U.S. 207–08. However, its intentional copying was not a factor because without a patent, copyright or protectable trade dress, competitors have every right to copy.

**c.** **Juliska's designs are too complex to qualify as a protectable trade dress because the public could not keep its features in mind.**

Before Juliska sued, it knew that its alleged trade dress is too complex for the public to recognize as a trade dress. What could Juliska say? "Look for glassware with:

(i) a scalloped spiral thread design, with a "berry" shape appearing on or around the point of the scallop; (ii) curved lines of thread with "berries" on or adjacent to the thread; and (iii) a line of thread forming a circle, with a single "berry" in the center of the circle." (Juliska's definition of its trade dress, Dkt. 55, ¶ 24).

### d. Juliska's glassware designs are too inconsistent to be a brand.

Photographs (size modified here) of six glasses from a Juliska catalog are shown below:



Two facts jump out. First, though paragraph 24 of the amended complaint (Dkt. 55) defines a single, alleged trade dress with three dissimilar variations, other combinations of what Juliska calls "berries and threads" fall outside its definition. Some glasses have two threads; another has one. Some have one berry; others have two or more. Berries may be on or off the thread. The number of dots in the berries varies. The thread may be circular, spiraled or in complex designs. Second, consumers looking at different Juliska glasses can reach only one conclusion: Juliska's "threads" and "berries" decorate the glasses instead of identifying Juliska as the source.

Based on existing law, Juliska had to know that it faced a "special burden" to prove trade dress in the "overall look of a number of different packages." *See Walt Disney Co. v. Goodtimes Home Video Corp.*, 830 F. Supp. 762, 766 (S.D.N.Y. 1993) (finding the alleged trade dress for product packaging too inconsistent to be protected). *See also Landscape Forms*, 113 F.3d at 380 (holding a plaintiff faces a difficult challenge to show that a line of products is a trade dress. "[J]ust as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance."). Juliska's trade dress claims attempt to protect an idea, i.e., any glass or vase, regardless of shape, with at least one "thread" irrespective of its length, position or orientation and at least one "berry" irrespective of its size, location or position relative to one or more "thread."

**5.** **Juliska's copyright claim is objectively unreasonable because it is not the author, it never had evidence of copying, and it knew that its glasses and vases are uncopyrightable "useful articles."**

Recognizing the futility of its trademark and trade dress claims, Juliska opened a new front against Zodax with a copyright cause of action. Yet, by the time Juliska asked the Court for leave to amend, Juliska already knew that its potential recovery was tiny, and therefore litigation was not worthwhile. Rather than trying to salvage its case, Juliska failed to try to gain evidence on critical issues.

    a.    **Prevailing defendants in copyright actions can recovery their attorney fees when the action was frivolous, objectively unreasonable or brought for improper motivation.**

The Copyright Act provides, "… Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The standard governing attorney fees awards under copyright is the same for prevailing plaintiffs and defendants. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Further, "there is no precise rule or formula for making [attorney fees] determinations, but instead equitable discretion should be exercised." *Id.* (internal quotation marks omitted). Courts should consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534, n.19 (internal quotation marks omitted).

Since *Fogerty*, objective reasonableness receives substantial weight in attorney fees analyses. *See Matthew Bender*, 240 F.3d at 122 (2d Cir. 2001) ("[O]bjective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted" in copyright suits). *See also Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 733 (7th Cir. 1996) (holding, "the district court abused its discretion by failing to award attorney's fees based on the objective unreasonableness of [plaintiff's] complaint"); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (awarding fees

because plaintiff's claims were "factually unreasonable" among other issues);[5] "[B]ad faith, frivolous or vexatious conduct is no longer required." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) (on remand).

Second Circuit courts apply similar standards. *See, e.g.*, *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 148 (2d Cir. 1984) (awarding attorney fees to prevailing defendant pre-*Fogerty* because "plaintiff's claims are objectively without arguable merit;" "finding of subjective bad faith is not necessary"); *Matthew Bender*, 240 F.3d at 122. ("[O]bjective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted."). Courts grant attorney fees to prevailing defendants with only a showing of objective unreasonableness even without other supporting facts. *See, e.g. Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 (S.D.N.Y. 1994); *Adsani v. Miller*, No. 94 Civ. 9131 (DLC), 1996 WL 531858, *14-15 (S.D.N.Y. Sept. 19, 1996).

Awarding attorney fees will deter Juliska from filing lawsuits on rights it does not have. In its cease and desist letter to Zodax, Juliska stated, "For twelve years, Juliska has strictly controlled the distribution of products bearing the Registered Mark and the Berry and Thread Trade Dress to carefully chosen retailers of selected markets. As Zodax knows from firsthand experience, those who have attempted to infringe on Juliska's rights in the Registered Mark or Berry and Thread Trade Dress have, at Juliska's insistence, ceased infringement and acknowledged Juliska's rights in its marks." Ex. 1. Dismissing this suit is insufficient deterrence against future lawsuits. In a case like this, an award of attorney's fees would beneficially deter, rather than excessively chill, future lawsuits. *See Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001) (holding that failure to award of attorney fees in similar situations "would invite others to bring similarly unreasonable actions without fear of any consequences.").

---

[5] Cited with approval in *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001).

The remaining discussion about Juliska's copyright claim shows that it is objectively unreasonable, frivolous and motivated by bad faith.

### b.        Juliska knew that it could not prove copying

Juliska had to prove ownership of the copyright and copying by Zodax. *See Feist*, 499 U.S. at 361. Juliska neither had evidence of copying nor tried to get the evidence.

Where, as here, plaintiffs have no direct evidence of copying (i.e., an admission), they normally prove copying "by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Castle Rock Entm't v. Carol Publ'g Grp.*, 150 F.3d 132, 137 (2d Cir. 1998) (citation omitted). "[T]he Court then must determine whether, in the eyes of a 'lay observer,' a 'substantial similarity exists between the allegedly infringing work and the *protectible* elements of plaintiff's.'" *Blakeman v. Walt Disney Co.*, 613 F. Supp. 2d 288, 305 (E.D.N.Y. 2009) (emphasis in original).

Before Juliska added its copyright claim, the parties filed a joint status report (Dkt. 31) in which Juliska admitted that it knew a "'Chinese business entity' manufactured the accused products." Juliska had to prove the manufacturer admitted to copying or at least had access to Juliska's glassware. Yet, Juliska took no steps to depose or obtain evidence from or about the manufacturer. Thus, Juliska knew it could not prevail because it had no evidence in support of the critical element of proof of copying.

### c.        Juliska's glasses and vases are not copyrightable because they are "useful articles."

Copyright does not protect "useful articles." 17 U.S.C. § 101. Copyright can protect "pictorial, graphic, and sculptural works," *Id.* § 102(a)(5), but before Juliska decided to add its copyright claim, it knew or should have known that its glasses were uncopyrightable useful articles. "A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that normally is a part of a useful article is considered a "useful article." *Id.* § 101. Juliska's glasses and vases have intrinsic utilitarian functions for drinking and holding flowers.

The Second Circuit considered the "useful article" issue repeatedly. *Brandir Int'l v. Cascade Pac. Lumber Co.*, 834 F.2d 1142 (2d Cir. 1987), is a lead case in the field. It held uncopyrightable "a bicycle rack made of bent tubing that is said to have originated from a wire sculpture." *Id.* at 1143. "[I]f design elements reflect a merger of aesthetic and functional considerations, the artistic aspects of a work cannot be said to be conceptually separable from the utilitarian elements. Conversely, where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists." *Id.* at 1145. *Brandir*'s bicycle rack originated as a sculpture, which remained copyrightable, but altering it into a bicycle rack made it an uncopyrightable useful article. "Form and function are inextricably intertwined in the rack, its ultimate design being as much the result of utilitarian pressures as aesthetic choices. Indeed, the visually pleasing proportions and symmetricality of the rack represent design changes made in response to functional concerns." 834 F.2d at 1147. Similar reasoning applies to Juliska's glassware in which the "form," the shape of the glass, and their function, for drinking and holding flowers, "are inextricably intertwined" in the glassware.

Juliska might argue that its designs can be identified separately from its glassware's utilitarian aspects. However, Juliska did not register the *designs*; it registered the glasses and vases. See Ex. A to amended complaint (Dkt. 55), titling the "works" with the names Juliska calls them in their catalogs (e.g. "Isabella Large Tumbler B143/C"). One registration even covers three useful-article vases, but having three different vases is an admission that the registrations cover useful articles, not the separate designs on each vase.

Like *Brandir*'s bicycle rack, Juliska's design elements are "a merger of aesthetic and functional considerations" so that the design elements are not conceptually separable from the glassware's utilitarian elements. *Brandir*, 834 F.2d at 1145. The "threads" of the designs go around or spiral around the round glass or vase, and the "berries" are positioned relative to the "threads." In addition, the thread must go farther around wider parts of glassware. See Ex. 19, p. 18-19, 21, 32-33, 46. Thus, the glassware's shape and function affect the designs.

Juliska's catalog also displays the stemmed goblet and the decanter as performing their function—containing wine. The text in Juliska's advertising also stresses function, stating, "Soft cheeses, olives and fine wine The fine wine ritual." Ex. 24 p. 7. Another page states, "Carefully designed to please the polished palate of the wine connoisseur, our new Amalia stems will pair perfectly with your favorite vintage." Ex. 19, p. 19.

Zodax recognizes that the Copyright Office granted Juliska the registrations. However, Juliska knew or should have known that its glasses and vases remain uncopyrightable useful articles. No Second Circuit case supports the glassware's copyrightability.

The Copyright Office is not perfect. "While the expertise of the Copyright Office is in interpretation of the law and its application to the facts presented by the copyright application, it is permissible for the district court itself to consider how the copyright law applies to the articles under consideration." *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 426 (2d Cir. 1985) (citation and internal quotation marks omitted). Thus, regardless of what the Copyright Office did here, as a matter of law, and as Juliska knew or should have known, its glasses and vases are uncopyrightable useful articles.

### d.      Juliska is not the "author" of the copyrighted works.

The registrations claim that Juliska is the author as a work for hire, i.e., a work "prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101. See Dkt. 55, Ex. 1. However, no evidence supports its work-for-hire claim. Gooding, its CEO, admitted that its glasses was "authentic reproductions." Further, when Juliska produced all its drawings that it supposedly sent to the Czech glassblowers, none shows any copyrighted designs.

### e.      Juliska's amending the complaint to add a copyright infringement claim was a ploy to increase the expense to Zodax and delay Zodax from filing a summary judgment motion.

On August 29, 2014, Zodax notified Juliska that Zodax would file for summary judgment upon receiving Juliska's document production and taking one Rule 30(b)(6) deposition. See Ex. 25, ¶6. Zodax served its deposition notice that day, setting an October 10 deposition date, Ex. 26, which was delayed by two weeks at Juliska's request.. That two-week delay gave Juliska time,

on October 21, to ask the Court for a conference before filing a motion to file an amended complaint. Dkt. 47. On the same day, Zodax requested a conference to file a summary judgment motion. Dkt. 46.

Juliska knew that its trademark and trade dress claims in its original complaint were objectively unreasonable, and a summary judgment motion likely would succeed against those claims. Therefore, it needed a ploy to prevent an immediate and inglorious end to the lawsuit. The new copyright claim would make the litigation more expensive for Zodax and might force Zodax to capitulate at last. Courts hold that such an improper motivation supports an attorney fees award.

> [T]he copyright claim was not brought because of its inherent merit but because of its value in settlement negotiations. It was another chip, belatedly introduced to strengthen [plaintiff's] bargaining position. And a party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain—in this case, the leveraging of a settlement—is indeed improperly motivated.

*Torah Soft Ltd. v. Drosnin*, No. 00 Civ. 5650 (JCF), 2001 U.S. Dist. LEXIS 19217, at *15, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) (awarding attorney fees).

When Zodax continued to defend itself, Juliska finally had to dismiss. It acted in bad faith by suing originally, by not dismissing before Zodax had to gear up its defense, by not accepting Zodax's reasonable settlement offers and by adding a copyright claim when it knew its trademark and trade dress claims could not survive summary judgment.

### f.    The related state law claims would have fallen.

Juliska based its state law, unfair competition, trademark and trade dress infringement and trademark dilution claims under the acts alleged in the federal claims for relief. The state law claims also fall. *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 273 (E.D.N.Y. 2014) (holding on Rule 12(b)(6) motion to dismiss).

### 6.    Juliska's dismissal near the end of discovery but before summary judgment or trial does not excuse its actions

*Colombrito*, 764 F.2d at 134-35, prevents an award of attorney fees unless the statutes at issue (here Lanham Act and copyright) have independent statutory authorization for attorney

fees. *See Krasnow*, 58 F. Supp. 828 (S.D.N.Y. 1945) (cited by *Colombrito*), where the court awarded attorney fees following a dismissal with prejudice. *Shady Records, Inc. v. Source Enters.*, 371 F. Supp. 2d 394 (S.D.N.Y. 2005), described the logic for this general rule and its exception. "Defendants are generally not entitled to an award of attorneys' fees when they prevail at trial; early termination by voluntary dismissal does not impose extra costs on defendants, but rather saves fees by avoiding the necessity of a trial." *Id.* at 399. However, the court recognized that it could award attorney fees following the dismissal because of the attorney fee provision in the Copyright Act. *Id.*

Likewise, in *Riviera Distribs. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008), the court awarded defendant its attorney fees under the Copyright Act following plaintiff's dismissal with prejudice. "[Defendant] obtained a favorable judgment. That this came about when [plaintiff] threw in the towel does not make [defendant] less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor. Plaintiff sued; [defendant] won; no more is required." *Id.* at 928. Therefore, the Court still has authority to award attorney fees following Juliska's dismissal with prejudice because of the fee shifting provisions in Lanham and Copyright statutes.

### 7. Most of Zodax's attorneys fees were incurred defending against the trademark and trade dress claims

From before suit was filed until Juliska requested permission to add the copyright claims, this suit was only about Juliska's trademark and trade dress claims. Thus, the preponderance of Zodax's attorney fees arose from defending these two claims. Zodax believes that this motion shows Juliska's liability for attorney fees for all claims. However, if the Court considers treating the trademark–trade dress claims different from the copyright claims, Zodax only began work on the copyright claims in November, seven months into the lawsuit.

Zodax's initial discovery and its only deposition occurred before or just as Juliska sought to add its copyright claim. Juliska's depositions of Zodax's two officers were not limited to copyright issues. After copyright became an issue, Zodax's attorney researched the issues that

this motion discusses. It propounded two sets of written discovery, Exs. 36 and 37, but they were not limited to copyright issues. It prepared for depositions of Juliska's creative team, and the questions would have concentrated on copyright issues, however. Zodax estimates that at least 85% of the work performed in this lawsuit related to the trademark and trade dress issues or to matters that related to the entire defense.

### 8.    The Amount of Attorney Fees is Reasonable

Courts determine the amount of reasonable fees based on the lodestar amount, which corresponds to the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010). *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007), criticized earlier cases using the loadstar approach and determined a "reasonable hourly rate," "the rate a paying client would be willing to pay" to establish a "presumptively reasonable fee." The court suggested that factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), were appropriate.[6] *Arbor Hill*, 522 F.3d at 190. Although *Kenny A* relies on the lodestar method, "most district courts in this Circuit continue to apply *Arbor Hill*'s "'presumptively reasonable fee' calculation" in setting the reasonable fee amount." *Spencer v. City of New York*, No. 06 Civ. 2852 (KMW), 2013 U.S. Dist. LEXIS 161693, at *4-5, 2013 WL 6008240 (S.D.N.Y. Nov. 12, 2013). *See also Brown v. Starrett City Assocs., Inc.*, 09-CV-3282 (JBW), 2011 U.S. Dist. LEXIS 124480, at *13, n.5, 2011 WL 5118438 (E.D.N.Y. Oct. 27, 2011) ("Whatever the terminology, both *Arbor Hill* and *Kenny A.* require the Court to consider case-

---

[6] "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

specific factors in determining the reasonableness of the hourly rates and the number of hours expended."

Both the amount of work performed by Zodax's counsel and the billing rates employed were reasonable. See Ex. 32 and 33 to the Harris Declaration. The exhibits are the detailed billing-entry spreadsheets, the entries of which became Zodax's invoices. These spreadsheets provide with specificity each attorney and paralegal's actual work. Harris Decl. ¶ 20_. The total amount of work billed was both necessary and reasonable to litigate this case. Harris Decl. ¶ 20.

Moreover, the billing rates employed were reasonable. Billing rates of other law firms with similar trademark and copyright experience are much higher than those of the attorneys that worked on this case. Harris Decl. ¶ 20. Michael Harris and Kala Sarvaiya, the attorneys who did most of the work on this case are experienced intellectual property litigators, had billing rates that are lower than the rates previously found reasonable by the Southern District of New York for experienced intellectual property litigators. *See Diplomatic Man, Inc. v. Nike, Inc.*, 2009 U.S. Dist. LEXIS 29343, at *16, 2009 WL 935674 (S.D.N.Y. Apr. 6, 2009) (approving partner billing rates of $650 per hour more than five years ago).

Zodax's defense succeeded completely. Its attorneys' actions were reasonable and necessary to litigate this case competently. And the billing rates employed were reasonable. Zodax's counsel staffed this case efficiently (one partner, one junior partner) with some small amount of work from another partner and work from local counsel. Accordingly, as set forth in counsel's declarations and the exhibits, an award of Zodax's entire fees and costs of $476,079 is appropriate.

## D. CONCLUSION

Juliska brought this case without a factual or legal basis. It knew that Zodax did not use its JULISKA trademark. It also knew that it had done nothing to establish secondary meaning in any of its glassware designs let alone all of the glassware that is the subject of its trade dress claims. Juliska also should have known that it could not establish copyright infringement or support authorship, and that controlling case law invalidates Juliska's copyright.

The trademark and trade dress claims are "exceptional" under the Lanham Act, and the copyright claims also warrant an award of attorney fees. Therefore, Zodax requests that the court grant this motion and award it its attorney fees for defending this lawsuit.

March 31, 2015

Philip Furgang
philip@furgang.com
FURGANG & ADWAR, L.L.P.
1325 Avenue of the Americas, 28th Floor
New York, New York 10019
Tel: (212) 725-1818 • Fax: (212) 941-9711

Attorneys for Defendant, Zodax L.P.

/s/ M. Kala Sarvaiya
M. Kala Sarvaiya
ksarvaiya@socalip.com
Steven C. Sereboff
ssereboff@socalip.com
Michael D. Harris
mharris@socalip.com
SOCAL IP LAW GROUP LLP
310 North Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax (805) 230-1355

Attorneys for Defendant, Zodax L.P.

## CERTIFICATE OF SERVICE

On March 31, 2015, I served the foregoing document "Defendant Zodax's Memorandum of Points and Authorities Supporting its Motion for Attorney Fees" to attorneys for all parties by filing the document through the CM/ECF system, which will notify all such attorneys

March 31, 2015

/s/ *M. Kala Sarvaiya*
M. Kala Sarvaiya