UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____         │
│ DATE FILED: 8-7-15               │
└─────────────────────────────────┘
```

PENSHURST TRADING INC.,

                      Plaintiff,

   -v-

ZODAX LP,

                      Defendant.

No. 14-cv-2710 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

On February 10, 2015, the Court issued an Order dismissing this action with prejudice, upon Plaintiff's request, pursuant to Federal Rule of Civil Procedure 41(a)(2). (Doc. No. 71.) Now before the Court is Defendant's motion for attorneys' fees pursuant to the fee-shifting provisions of the Lanham Act and the Copyright Act. For the reasons set forth below, the Court denies the request.

I. INTRODUCTION

Plaintiff filed this action on April 16, 2014, asserting claims for trademark infringement, trade dress infringement, and unfair competition under the Lanham Act and New York State law stemming from Defendant's sale of glassware that allegedly infringed Plaintiff's trade dress and "Juliska" trademark. (Doc. No. 2.) On November 12, 2014, after seeking, and receiving, leave of the Court, Plaintiff filed an amended complaint that added a claim for copyright infringement. (Doc. No. 55 ("FAC").) On January 26, 2015, Plaintiff filed a letter seeking to dismiss this action without prejudice pursuant to Rule 41(a)(2). (Doc. No. 63.) The next day, Defendant filed a letter asserting that "[a]ny dismissal should be with prejudice." (Doc. No. 64.) On February 5, 2015, the Court issued an Order converting Plaintiff's motion to voluntarily dismiss *without* prejudice to a

motion to voluntarily dismiss *with* prejudice, and gave Plaintiff the opportunity to withdraw the motion if it wished. (Doc. No. 68.)  Thereafter, Plaintiff filed a letter consenting to the conversion (Doc. No. 69), and on February 10, 2015, the Court dismissed this action with prejudice (Doc. No. 71).   On February 12, 2015, Defendant filed a pre-motion letter seeking the Court's leave to file a motion for attorneys' fees in light of Defendant's status as the prevailing party after the dismissal with prejudice.  (Doc. No. 72.)  Following Plaintiff's letter in opposition (Doc. No. 73), the Court directed the parties to appear for a pre-motion conference with respect to the motion (Doc. No. 74). At the conference, the Court set a deadline for Defendant to file its motion and directed that Plaintiff need not respond unless otherwise ordered.  (*See* Minute Entry of March 17, 2015.) Defendant subsequently filed its motion for attorneys' fees (Doc. No. 85), together with a memorandum of law in support of the motion (Doc. No. 86 ("Mem.")) and three declarations (Doc. Nos. 87–89).  The Court did not order a response.

## II. DISCUSSION

Defendant seeks attorneys' fees with respect to each of Plaintiff's claims for trade dress infringement, trademark infringement, and copyright infringement.  Because attorneys' fees under the Lanham Act and attorneys' fees under the Copyright Act involve two different legal standards, the Court will analyze Defendant's fee requests separately under each statute.

### A. Lanham Act Claims

The Court may award attorneys' fees to a prevailing party under the Lanham Act only in "exceptional cases."  15 U.S.C. § 1117(a).  At the outset, the Court notes that, in light of the dismissal of this action with prejudice, Defendant is the prevailing party. *See, e.g.*, *Ninox Television Ltd. v. Fox Entm't Grp., Inc.*, No. 04-cv-7891 (DLC), 2006 WL 1643300, at *2 (S.D.N.Y. June 13, 2006).   Accordingly, the appropriateness of attorneys' fees depends on whether this case is "exceptional."  A case may be "exceptional" where it involves "willfulness, fraud, or bad faith."

2

*Mister Softee of Brooklyn, Inc. v. Boula Vending Inc.*, 484 F. App'x 623, 624 (2d Cir. 2012) (summary order).  Circumstances and factors relevant to this determination include the pursuit of "frivolous, meritless or otherwise baseless litigation."  *Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13-cv-2754 (KBF), 2014 WL 7323419, at *2 (S.D.N.Y. Dec. 16, 2014).

In the context of the Patent Act – which uses the same language as the Lanham Act in conferring discretionary authority to award attorneys' fees – the Supreme Court recently clarified the "exceptional case" requirement, holding that:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  The law is unsettled as to whether this clarification applies equally under the Lanham Act.  *See Cross Commerce Media, Inc.*, 2014 WL 7323419, at *3 ("The Court finds that this is an exceptional case within the standard articulated in this district, as well as within the more lenient standard set forth by the Supreme Court in *Octane,* to the extent it is applicable."); *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13-cv-3669 (DLC), 2015 WL 3916271, at *10 (S.D.N.Y. June 25, 2015) (noting that *Octane* "offers guidance").  Thus, while bad faith – which may be inferred from the frivolousness of a litigation position, *see Therapy Products, Inc. v. Bissoon*, No. 07-cv-8696 (DLC), 2009 WL 2709279, at *2 (S.D.N.Y. Aug. 26, 2009) – has previously been a prerequisite to attorneys' fees under the Lanham Act, it is not clear whether that remains so today.  *See Octane Fitness*, 134 S. Ct. at 1757 ("But a case presenting *either* subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." (emphasis added)).  In any event, whether or not the Court applies the slightly more lenient standard set forth in *Octane Fitness* to Plaintiff's Lanham Act claims, the Court concludes that this case is not "exceptional" as

necessary to justify the award of attorneys' fees.  The Court addresses the trade dress infringement and trademark infringement claims in turn.

### 1. Trade Dress Infringement

Defendant asserts that Plaintiff's trade dress infringement claim was frivolous because Plaintiff "had no evidence that its glassware designs were protectable trade dress."  (Mem. at 12.) Trade dress is a registrable category under the Lanham Act "that originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded . . . to encompass the design of a product."  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000).  In order to be protectable, trade dress must be "distinctive."  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).  Trade dress may be *inherently* distinctive "if 'its intrinsic nature serves to identify a particular source,'" or, alternatively, may *acquire* distinctiveness by developing secondary meaning.  *Wal-Mart Stores*, 529 U.S. at 210 (quoting *Two Pesos*, 505 U.S. at 768) (alteration omitted).

Significant here, product *design* – as contrasted with product *packaging* – is never inherently distinctive; thus, where a trade dress claim arises out of a product's *design*, the plaintiff must prove secondary meaning.  *Id*. at 212.  Trade dress develops secondary meaning "when, 'in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.'"  *Id*. at 211 (alteration omitted) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.11 (1982)); *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) ("Secondary meaning suggests that, with time and market exposure, a trade dress may come to identify not only goods, but also the source of the goods.").  Whether trade dress has acquired secondary meaning is a factual question.  *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992).  Factors relevant to that determination include: "(1) advertising expenditures, (2) consumer studies linking the mark to

a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 618 (2d Cir. 2008) (summary order).

Defendant asserts that Plaintiff had no evidence of secondary meaning, stressing that Plaintiff has not engaged in "look-for" advertising – which "tells consumers [to] view a product's design as a brand, not merely as something attractive." (Mem. at 13–14.)  However, without a fully developed record, the Court cannot conclude based on Defendant's submission that Plaintiff's claims of secondary meaning were entirely baseless or frivolous.   Specifically, Plaintiff has referenced "scores of unsolicited magazine articles and press features, all prominently featuring [Plaintiff's] distinctive berry and thread trade dress," as well as "voluminous social media posts" invoking the trade dress, including, for example, the use by consumers of a "#BerryandThread" "hashtag."   (Doc. No. 73 at 3; FAC ¶ 7.)   Furthermore, while Defendant notes that Plaintiff's alleged trade dress encompasses multiple related designs, "there is no question that trade dress may protect the 'overall look' of a product." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) ("A plaintiff . . . may seek trade dress protection for an entire product line, by establishing that the 'overall look' in each separate product is consistent." (citation and internal quotation marks omitted)).   The Court simply cannot say, as a matter of law, that Plaintiff's assertions that its trade dress represents a consistent "overall look" are unreasonable or frivolous.   Additionally, the fact that other parties have, in the past, capitulated to Plaintiff's demands to stop infringing Plaintiff's trade dress suggests that there have been attempts to plagiarize Plaintiff's product, another factor relevant to secondary meaning.  Finally, although Defendant stresses the "heavy burden" faced by a trade dress infringement plaintiff with respect to evidence of secondary meaning, *see Atlantis*

*Silverworks, Inc. v. 7th Sense, Inc.*, No. 96-cv-4058 (MBM), 1997 WL 128403, at *4 (S.D.N.Y. Mar. 20, 1997), Defendant has not addressed the other factors relevant to secondary meaning specifically, and it may well be that Plaintiff moved to voluntarily dismiss this action precisely when it realized that its claim, brought in good faith, could not be borne out by the evidence. Such a determination – without more – does not rise to the level of bad faith or signify an "exceptionally meritless claim." Put simply, the Court declines to label Plaintiff's trade dress infringement claim as "exceptional" merely because it litigated this claim for ten months before voluntarily dismissing. In fact, even if the Court were to find that Plaintiff's claim *was* exceptional, the Court would exercise its discretion and decline to award attorneys' fees, *see Mister Softee*, 484 F. App'x at 624, given that the decision to voluntarily dismiss with prejudice was made prior to the summary judgment stage.

## 2. Trademark Infringement

Similarly, the Court cannot find on this record that Plaintiff's trademark infringement claim was so exceptional as to justify an award of attorneys' fees. Trademark infringement under the Lanham Act "is analyzed under a familiar two-prong test. The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004). In assessing the likelihood of confusion, courts consider factors that include the "(1) strength of plaintiff's mark, (2) similarity of competing marks, (3) competitive proximity of the products, (4) likelihood that plaintiff will 'bridge the gap' and offer a product like defendants' product, (5) actual confusion, (6) defendants' good faith, (7) quality of defendants' product, and (8) sophistication of the buyers." *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 411 (S.D.N.Y. 2006). The likelihood of confusion is a heavily fact-dependent question. *Id.* at 412.

Here, although Defendant broadly asserts that Plaintiff's mark is not written directly on Defendant's products, the Court finds that allegations in the FAC take Plaintiff's trademark infringement claim out of the realm of the frivolous or exceptional.  Specifically, the FAC alleges that at a trade show in 2014, a representative of Defendant approached Plaintiff's chief executive officer, Mr. David Gooding – apparently unaware that Mr. Gooding was associated with Plaintiff – and asked, "Do you like our '*Juliska-ish*' products?"  (FAC ¶ 62 (emphasis added).)  Whether or not this incident *by itself* would suffice to impose liability for trademark infringement on Defendant, the Court finds that it at least suggests that Plaintiff's trademark infringement claim was something more than a fishing expedition or "shakedown."  Thus, on the record before it, the Court is unable to conclude that Plaintiff's trademark infringement claim was frivolous, asserted in bad faith, or otherwise exceptional.

Accordingly, the Court declines to award attorneys' fees to Defendant with respect to either of Plaintiff's Lanham Act claims.

### B.  Copyright Act Claim

Under the Copyright Act, a court "may . . . award [attorneys' fees] to the prevailing party as part of the costs."  17 U.S.C. § 505.  Factors that courts use to "guide [their] discretion" "include frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994) (citation and internal quotation marks omitted).  In particular, the Second Circuit has made clear that "objective reasonableness is a factor that should be given substantial weight."  *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001).

To prevail on its copyright infringement claim, Plaintiff was required to prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

7

original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  With respect to the first element, the "possession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (alteration, citation, and internal quotation marks omitted).  As to the second element, "a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citations and internal quotation marks omitted).  Moreover, "it is well established . . . that one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (emphasis and internal quotation marks omitted).

Here, Defendant concedes that Plaintiff has registration certificates for its copyrights, which presumptively satisfies the first element of infringement.  (Mem. at 20.)  Notwithstanding this presumption, the very next sentence of Defendant's brief states that Plaintiff "knew or should have known that its glasses and vases remain uncopyrightable useful articles."  (*Id.*; *see also id*. ("The Copyright Office is not perfect.").)  However, in addition to raising a presumption that the designs were copyrightable, the Copyright Office's determination that Plaintiff was entitled to registrations is strongly probative of the objective *reasonableness* of Plaintiff's belief that its designs were copyrightable, even if such beliefs were ultimately erroneous.  Similarly, the doctrine of conceptual separability – whereby "individual design elements of useful articles are afforded some level of protection under the Copyright Act, so long as those design elements are . . . conceptually separable from the article itself," *Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 326 (2d Cir.

2005) – provided an alternate basis from which Plaintiff could have derived a good faith belief in the validity of its copyrights.

With respect to the second element of copyright infringement, the Court likewise cannot conclude that Plaintiff was objectively unreasonable in believing that Defendant had copied its designs.  Whether or not the manufacturer of Defendant's glassware – apparently a foreign company – *actually* had access to Plaintiff's copyrighted material is not clear on the sparse record before the Court.  At the very least, however, the substantial similarity between the glassware sold by Defendant and that sold by Plaintiff could reasonably have led Plaintiff to *infer* that Defendant or its manufacturer had access to and copied Plaintiff's broadly marketed designs.  Thus, nothing in the record suggests that Plaintiff's copyright infringement claim was objectively unreasonable, frivolous, or based on some bad-faith motivation.  (*See* Mem. at 20–21.)

In sum, as with the Lanham Act claims, the Court finds that Defendant is not entitled to attorneys' fees based on Plaintiff's Copyright Act claim.

### III. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's motion for attorneys' fees with respect to Plaintiff's Lanham Act and Copyright Act claims is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 85 and to close this case.

SO ORDERED.

Dated:       August 7, 2015
             New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE